IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BEAR CONSTRUCTION AND HOME
SERVICES, LLC d/b/a BEAR FENCE
COMPANY d/b/a BEAR PLUMBING
AND GAS d/b/a BEAR RESTORATION
d/b/a BEAR ELECTRIC d/b/a BEAR
HEATING AND AIR                                                        PLAINTIFF

v.                                  NO. 4:25-cv-00857-LPR

BELMANS ROOFING LLC d/b/a
MAMA BEAR RESTORATION SERVICES                          DEFENDANT

### VERIFIED COMPLAINT

Plaintiff Bear Construction and Home Services, LLC d/b/a Bear Fence Company d/b/a Bear Plumbing and Gas d/b/a Bear Restoration d/b/a Bear Electric d/b/a Bear Heating and Air ("Bear"), by and through its attorneys, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., and for its Verified Complaint against Defendant Belmans Roofing LLC d/b/a Mama Bear Restoration Services ("Belmans"), states:

### PARTIES, JURISDICTION, AND VENUE

1.      Bear is an Arkansas limited liability company with a current principal place of business in Cave Springs, Arkansas.

2.      Belmans is an Arkansas limited liability company with its principal place of business in Rogers, Arkansas. Its agent for service of process is Maura Barrientos, 811 E. Southern Trace, Rogers, Arkansas 72758.

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), because it arises under the Lanham Act, 15 U.S.C. § 1052.

4.     The Court has supplemental jurisdiction over the state and common law claims under 28 U.S.C. § 1367(a).

5.     This Court has personal jurisdiction over Belmans pursuant to Ark. Code Ann. § 16-4-101.

6.     Venue is proper in this district under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

7.     Bear is the owner of a family of BEAR-formative marks outlined below (the "Bear Marks")[1] in association with its construction, home restoration, plumbing, and other related services ("Bear's Services").

a.  BEAR

b.  BEAR RESTORATION

c.  BEAR CONSTRUCTION AND HOME SERVICES

d.  BEAR RESTORATION AND CONSTRUCTION

e.  BEAR FENCE COMPANY

f.  BEAR PLUMBING AND GASE

g.  BEAR ELECTRIC

h.  BEAR HEATING AND AIR

i.  BEAR PLUMBING, RESTORATIOIN, AND CONSTRUCTION

j.  The Logo Marks below:

---

[1] Terms included in all capital letters refer to trademarks. By using this all-capital letter format in association with any Belmans marks, Bear does not concede that Belmans has any protectible trademark rights.






**RESTORATION**





**PLUMBING & GAS**



**PLUMBING**

3







8.     Bear has used the Bear Marks in commerce in connection with Bear's Services since at least as early as 2018. *See* Ex. 1, Decl. of Michael Zeher, at ¶ 4.

*9.*     Bear has used, and continues to use, the Bear Marks to provide and market Bear's Services in Arkansas, Oklahoma, and Missouri, including most notably the Northwest Arkansas region. Ex. 2, Bear Website, at 1.

10.     Bear has advertised its services online through targeted digital advertising, Google Ads, television commercials, direct to consumer advertising via Bear's website, search engine optimization, consumer review sites like Yelp and Angie's List, trade shows, and a variety of other methods of promoting and advertising Bear's Services to the consumer. Ex. 1, at ¶ 8-11.

4

11.    Bear spent over a hundred thousand dollars in advertising costs in the last year alone to promote the Bear Marks in association with Bear's Services. Ex. 1, at ¶ 7.

12.    By way of Bear's use of the Bear Marks or variations thereof, Bear's customers commonly refer to Bear's business as "Bear", "Bear Construction," or "Bear Restoration." *See* Ex. 3, Consumer Reviews, at 2-6, 9-10, 12-13.

13.    Bear owns the domain www.bearnwa.com ("Bear's Domain") and operates the website thereof to provide and advertise Bear's Services. Ex. 4, Bear Domain Registration.

14.    Through Bear's extensive and continuous use of the Bear Marks, consumers in Arkansas, Oklahoma, and Missouri recognize the Bear Marks as source-identifiers of Bear's Services.

15.    Through Bear's use of the Bear Marks, Bear has developed substantial consumer recognition in the Northwest Arkansas area, including Benton, Washington, and Madison Counties.

16.    Belmans previously operated and marketed its services under the name Belmans Roofing until October of 2025 and, upon information and belief, only provided roofing services and did not advertise any other services. *See* Ex. 5, Belmans' Social Media at 1-2, 15-16.

17.    In October of 2025, Belmans publicly rebranded to "Mama Bear Restoration Services" and expanded its service offerings to include home restoration and renovation services ("Belmans' Services"). This includes a video released in the early portion of 2026 purporting to explain the reasons behind the rebrand that gave no apparent explanation as to why the name was chosen. Instead this video only served to promote identical services to the Bear Services *See* Ex. 5, at 1-2; Ex. 6, Belmans' Website at 1.; Ex. 7, Belmans Facebook Video Tr, at 1.[2]

---

[2] Exhibit 7 can be found in its complete video form at https://www.facebook.com/reel/2642038259495085

18.     As part of its rebranding, Belmans adopted the marks listed below, among other derivatives (the "Infringing Marks").

    a.  MAMA BEAR

    b.  MAMA BEAR RESTORATION SERVICES

    c.  The logo marks below:

 

19.     Belmans holds itself out as a home restoration services company under the Infringing Marks, evidenced by both its marketing and its use of the Infringing Marks. Ex. 5, at 1.

20.     Belmans uses the Infringing Marks to advertise and provide services identical to those provided by Bear in association with the Bear Marks. These include home restoration, storm restoration, fire restoration, and other home repair and renovation services. Ex. 5, at 6, 19; Ex. 6, at 1.

21.     Belmans, whose office is located in Rogers, Arkansas (less than thirty minutes away from Bear's office in Cave Springs), uses the Infringing Marks to advertise its services in the same market areas in which Bear provides its services, most notably Benton, Washington, and Madison Counties in the State of Arkansas. Ex. 6, at 1; Ex. 14, Google Maps Results.

22.     Belmans uses the Infringing Marks to target the same or similar consumers as those targeted by Bear, including consumers searching for home restoration, storm restoration, fire restoration, and home repair services. Ex. 5, at 6, 19; Ex. 6, at 5, 9, 10, 11; and Ex. 14, at 1.

23.     Belmans uses identical and similar channels of trade to provide and advertise its services that are used by Bear and Bear's and Belmans' services are identical and thus presumed to flow in the same channels of trade. These include, but are not limited to, Internet advertising, banner and street advertisement, social media advertising, and active membership in local chambers of commerce and industry groups. *See* Ex. 1, at ¶ 8-11; Ex. 2, at 1.; Ex. 5, at 1; Ex. 6, at 1; Ex. 9, Bear Social Media, at 1.; Ex. 10, Bear and Belmans Local Chambers of Commerce Memberships, at 1.

24.     Belmans uses the Infringing Marks in both digital and printed advertising, including dissemination over the Internet and social media platforms such as Facebook and Instagram. Ex. 5, at 1.

25.     Upon information and belief, Belmans owns the domain www.mamabearnwa.com (the "Infringing Domain") and the website operated therein ("Belmans Website"). Ex. 11, Belmans Domain Registrations.

26.     Belmans uses the Belmans Website and Infringing Domain to offer Belmans' identical services to consumers and offers the ability to request service and quotes for services performed by Belmans. Ex. 6, at 1.

27.     Belmans prominently uses the Infringing Marks on Belmans' Website. Ex. 6, at 1.

28.     Based on Belmans' use of the Infringing Marks, Bear has suffered instances of actual confusion, including consumer contacts and erroneous requests for job interviews. Ex. 1, at ¶ 16-20.

29.     In Bear's experience, new and potential customers most often learn about Bear by performing an Internet search on their phone or computer to verify the credibility and reputation of the company and locate the current phone number and address of Bear. Ex. 1, at ¶ 12.

30.     According to a 2024 report on how people find local businesses through Google (who has a 91% market share in the search engine industry), 80% of US consumers search for local businesses weekly and 32% search for local businesses daily. Additionally, 46% of all Google searches have local intent.[3]

31.     Bear's potential customers frequently rely on an Internet search to locate the phone number for Bear by searching "Bear Restoration" or "Bear Restoration Services," consistent with Bear's advertising efforts. Ex. 1, at ¶ 12.

32.     A general Internet search for "Bear Restoration nwa" using Google on either a mobile or desktop platform reveals Bear's website as a top result, a result which has been the same for many years. Ex. 8, at 1-2.

33.     Recently, however, there has been an unwelcome change in those search results. Now, Belmans' Website is among the top search results when consumers search for Bear. Ex. 8, at 1-6, 8-9.

34.     Belmans rebrand to a bear-focused name has also caused actual customer confusion. In fact, in just the few months since Belmans rebrand, Bear has been contacted by Belmans' customers attempting to make an appointment or ask questions. In response to those inquiries, Bear has always operated in good faith and attempted to correct the actual confusion. *See* Ex. 1, Decl. of Michael Zeher at 2-3.

---

[3] *The Top 54 Local SEO Statistics, Updated 2024*, SOCI, (last visited May 11, 2026), https://www.soci.ai/blog/local-seo-statistics/

35.     If that's not enough, on March 16, 2026, Bear received multiple phone calls about scheduled Zoom interviews for a sales position with Belmans. Ex. 1, at ¶ 18.

36.     Because consumers and even potential employees are confusing Bear and Belmans, there is prima facie evidence of a likelihood of confusion between the Bear Marks and the Infringing Marks.

37.     On or about February 20, 2026, Bear's counsel sent a cease-and-desist letter addressed to Maura Barrientos, principal of Belmans, informing Ms. Barrientos of Bear's Marks and use of Bear's Marks in association in Bear's Services. Bear requested Belmans cease using the Infringing Marks. *See* Exhibit 12, Cease & Desist Letter, at 1.

38.     On March 2, 2026, Belmans responded, refused Bear's request, and to this date, continues to use the Infringing Marks to advertise, market, provide its services, and expand its offerings and online presence with knowledge of the Bear Marks and Bear's superior rights. Ex. 13, Belmans Response to Cease and Desist, at 1.

39.     Belmans has infringed and continues to expand its infringement of Bear's rights in the Bear Marks following notice of infringement, willfully and intentionally using the Infringing Marks with knowledge of a likelihood of confusion with Bear.

40.     The Infringing Marks and the Bear Marks are confusingly similar  because BEAR is an arbitrary term in connection with home restoration services, Belmans has prominently used BEAR and bear imagery in its logos, BEAR is the dominant portion of the Bear Marks and the Infringing Marks, and Belmans has used similar bears in their logos in association with the Infringing Marks.

41.     Bear's use of the Bear Marks predates Belmans' use of the Infringing Marks or any other mark that is confusingly similar to the Bear Marks.

9

42.     Bear's rights in the Bear Marks are superior to any rights that Belmans may claim in the Infringing Marks or any other mark that is confusingly similar to the Bear Marks.

43.     Belmans' use of the Infringing Marks is ongoing and continues to harm Bear's reputation and goodwill and continues to cause consumer confusion and a false association with Bear.

### COUNT I – TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1125(a)(1))

44.     Bear realleges the allegations contained in the preceding paragraphs as if fully repeated herein.

45.     Bear brings this trademark claim pursuant to 11 U.S.C. § 1125 and its rights at common law.

46.     Bear is the owner of the valid and enforceable trademark rights to the Bear Marks by way of its substantial and continuous use of the Bear Marks in commerce since as early as 2018. Ex. 1, at ¶ 4.

47.     The term "bear" is arbitrary as applied to home restoration services and thus is a conceptually strong trademark.

48.     The Bear Marks are arbitrary marks and therefore conceptually strong.

49.     Bear has provided Bear's Services under the Bear Marks in Benton, Madison, and Washington Counties for over eight (8) years, developing considerable goodwill and consumer recognition throughout the region. Ex. 1, at ¶ 4; Ex. 2, at 1.

50.     Bear has expended hundreds of thousands of dollars in advertising costs for advertisement and promotion of its business and brand, including TV commercials, yard signs, social media pages, search engine optimization (SEO) tools, Google Ads, Angi (formerly Angie's

10

List) and Yelp listings, trade show booths, and other forms of consumer advertising. Ex. 1, at ¶ 7-9.

51. As a result of this continuous use and inherent distinctivness, Bear has common law trademark rights in the Bear Marks in *at least* Northwest Arkansas.

52. Belmans has no authorization or consent to use the Infringing Marks from Bear.

53. The Infringing Marks, namely MAMA BEAR and MAMA BEAR RESTORATION SERVICES, wholly encompass some of the Bear Marks, including BEAR and BEAR RESTORATION.

54. The infringing logo marks use the visage of a brown bear facing forward, just like the Bear Marks, with the identical-in-part word marks MAMA BEAR RESTORATION SERVICES and BEAR RESTORATION displayed beneath the bears in the respective marks.

55. Belmans provides its services under the Infringing Marks in Bear's identical service area – Northwest Arkansas. Ex. 6, at 1.

56. Belmans is using the Infringing Marks to provide identical or substantially similar services to Bear, namely home restoration services. Belmans' and Bear's target consumers are identical or substantially identical, and thus Belmans is in direct competition with Bear. Belmans and Bear use the exact same channels of trade, including Internet listings, to advertise and offer services to the consumer. Ex. 6, at 1.

57. In fact, Google search results return Bear's address information when a user searches for "mama bear restoration", showing that even the search engine is confused as to the identities of the parties. Ex. 8, at 8.

58. By using the Infringing Marks, Belmans intends to pass off on Bear's substantial and valuable goodwill and reputation in the Northwest Arkansas area.

59.    Instances of actual confusion between Bear and Belmans have occurred, including erroneous phone calls to Bear and a consumer's mistake as to Bear's affiliation with Belmans. *See* Ex. 1, at ¶ 16-20.

60.    The conditions of purchase are such that confusion is likely between Belmans and Bear, given that most customers of Bear and Belmans make quick, emergency decisions in deciding who to hire, as repair of a catastrophically damaged home is a service that needs to be initiated as soon as possible upon damage. Ex. 1, at ¶ 13.

61.    Bear's and Belmans' customers are primarily residential homeowners not sophisticated purchasers, who do not routinely utilize home restoration services companies and likely have limited knowledge on what services are needed to restore their home after catastrophic damage.

62.    Upon information and belief, Belmans is creating consumer confusion as to the source, sponsorship, and affiliation of Belmans with Bear by using the Infringing Marks in the same service area as Bear in association with identical services.

63.    Belmans' unauthorized use of the Infringing Marks has already caused consumer confusion and is likely to cause consumer confusion in the future.

64.    Belmans' use of the Infringing Marks constitutes common law trademark under 15 U.S.C. § 1125(a).

65.    Belmans' customers reviewing the quality of services performed by Belmans may be mistaken as to the source of those services and, as a result, develop a negative opinion or negatively review Bear.

66.    Any citations that Belmans receives for infractions of applicable laws and regulations governing the construction, restoration, and renovation industry may potentially be

mistakenly attributed to Bear, harming Bear's goodwill, damaging Bear's reputation, and creating hardship for Bear.

67.    Bear has no adequate remedy at law concerning the confusion created by Belmans' use of the Infringing Marks or confusingly similar variations of the Bear Marks.

68.    The harm that Belmans has inflicted and continues to inflict upon Bear's goodwill cannot be adequately compensated by monetary damages.

69.    The consumer confusion created by Belmans by the use of the Infringing Marks cannot be adequately compensated by monetary damages.

70.    Belmans' decision to continue and expand use of the Infringing Marks after receiving Bear's cease and desist letter was intentional and made with knowledge of Bear's rights.

71.    Bear is entitled to an injunction preventing Belmans' use of the Infringing Marks or any other mark that is confusingly similar to the Bear Marks.

**COUNT II –UNFAIR COMPETITION**
**(15 U.S.C. § 1125)**

72.    Bear realleges the allegations contained in the preceding paragraphs as if fully repeated herein.

73.    Bear is using the Bear Marks to provide Bear's Services and has done so since 2018. *See* Ex. 1, at ¶ 4.

74.    As a result of its use and extensive advertising of the Bear Marks, customers have come to refer to and recognize Bear as "Bear", "Bear Construction", and "Bear Restoration." *See* Ex. 3, at 2-6, 9-10, 12-13.

75.    Bear is the owner of valid and enforceable common law rights in the Bear Marks for use in association with Bear's Services.

13

76.    Belmans uses the Infringing Marks to provide Belmans' Services in commerce and began doing so over seven years after Bear's priority date of 2018.

77.    Upon information and belief, by way of Belmans' use of the Infringing Marks in the same service area for the same services, Belmans is creating consumer confusion as to the source, sponsorship, and affiliation of Belmans' Services with Bear.

78.    Belmans' unauthorized use of Infringing Marks has caused actual confusion. *See* Ex. 1, at ¶ 16-20.

79.    Upon information and belief, Belmans' acts have been willful and deliberate.

80.    Belmans therefore has unfairly competed under the Lanham Act.

81.    Belmans' conduct is causing immediate and irreparable harm and injury to Bear, and to its goodwill and reputation, and will continue to damage and harm Bear's goodwill and confuse the public unless enjoined by this Court. Bear has no adequate remedy at law.

82.    Bear is entitled to an injunction preventing Belmans' use of the Infringing Marks or any other mark that is confusingly similar to the Bear Marks.

## COUNT III – ANTICYBERSQUATTING CONSUMER PROTECTION ACT (ACPA)
### (15 U.S.C. § 1125(d))

83.    Bear realleges the allegations contained in the preceding paragraphs as if fully repeated herein.

84.    Bear owns all rights in and to the Bear Marks, which are strong and distinctive, and were strong and distinctive as of the date Belmans registered its domain name.

85.    Bear registered the domain www.bearnwa.com (the "Bear Domain") on March 17, 2019, and has owned and operated the domain and website therein since that time. Ex. 4.

86.    Upon    information    and    belief,    Belmans    registered    the    domain www.mamabearnwa.com (the "Infringing Domain") on August 22, 2025, over six years after Bear

registered the Bear Domain and over seven (7) years after Bear began using the Bear Marks. Ex. 11, at 1.

87. The Infringing Domain wholly includes the Bear Domain, which wholly incorporates some of the Bear Marks, namely BEAR and BEAR RESTORATION.

88. The Infringing Domain is substantially similar and identical in part to the Bear Domain and the Bear Marks.

89. Upon information and belief, Belmans knew of Bear's rights in the Bear Marks at the time of the registration of the Infringing Domain.

90. Nevertheless, Belmans decided to register a domain name that wholly included the Bear Marks *and* the letters "nwa" in an identical manner to the Bear domain.

91. Belmans made no previous bona fide offerings to consumers at the Infringing Domain or under the name Mama Bear Restoration prior to the acquisition of the Infringing Domain.

92. Belmans is making no legitimate noncommercial use of the Infringing Domain.

93. Upon information and belief, Belmans registered the Infringing Domain despite knowledge that Belmans had no rights in any name or mark and was not known by any name that was referenced or reflected in the Infringing Domain before its rebrand.

94. Upon information and belief, Belmans intended and intends to divert consumers looking for Bear's services online to Belmans' website by exploiting the confusingly similar domain name and the Bear Marks for Belmans' commercial gain.

95. Upon information and belief, Belmans' acts are willful and deliberate.

96.     Upon information and belief, Belmans has no legitimate rights to use the Infringing Domain or the terms contained therein as they are a result of an infringing rebrand and willful trademark infringement.

97.     Belmans' conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Bear, and to its goodwill and reputation, and will continue to damage Bear unless enjoined by this Court.

98.     Bear is entitled to an injunction preventing Belmans' use of the Infringing Domain or any other mark that is confusingly similar to the Marks.

## COUNT IV – STATE LAW UNFAIR COMPETITION

99.     Bear realleges the allegations contained in the preceding paragraphs as if fully repeated herein.

100.    Bear has continuously used the Bear Marks since at least 2018 in connection with Bear's Services in Benton, Washington, and Madison Counties. Bear therefore is the owner of common law trademark rights in the Bear Marks in Northwest Arkansas.

101.    The Bear Marks are distinctive as used in connection with Bear's Services by way of Bear's continuous use in commerce and by the arbitrary nature of the term "bear" as applied to home restoration services.

102.    As a result of Bear's extensive use of the Bear Marks and success in offering Services under the Bear Marks, the Bear Marks have acquired substantial goodwill and reputation with customers.

103.    Long after Bear began using the Bear Marks, in or around October 2025, Belmans began using the Infringing Marks to advertise, offer, and sell identical home restoration services to customers, as well as other related services. Ex. 11, at 1; Ex. 6, at 1.; Ex. 5, at 1.

16

104. Because of the similarities between the Bear Marks and the Infringing Marks and services offered thereunder, Belmans' use of the Infringing Marks is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Belmans with Bear.

105. At least since receiving Bear's cease-and-desist letter on February 20, 2026, Belmans' unfair competition has been willful and intentional.

106. Belmans' unfair competition has caused damage to Bear's reputation and goodwill by way of actual consumer confusion and disturbance to its ordinary business operations.

107. Belmans' ongoing competition has caused irreparable harm to Bear. This irreparable harm will continue unless Belmans is temporarily and permanently enjoined from further use of the Infringing Marks.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bear Construction and Home Services, LLC d/b/a Bear Fence Company d/b/a Bear Plumbing and Gas d/b/a Bear Restoration d/b/a Bear Electric d/b/a Bear Heating and Air hereby requests that this Court award the following relief:

(a) A determination that Belmans' actions constitute infringement of an unregistered trademark under 15 U.S.C. § 1125;

(b) A determination that Belmans' actions constitute unfair competition;

(c) A determination that Belmans' actions violate 15 U.S.C. § 1125;

(d) A temporary and permanent injunction against Belmans to enjoin Belmans and its employees, officers, agents, licensees, and franchisee managers and/or directors from providing construction, restoration, renovation, or other similar services in association with any trademark that is confusingly similar to the Bear Marks;

17

(e)      Require Belmans to destroy, or deliver to an officer of the Court to be destroyed, all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, stationery, and any other items in its possession or control which contain the Infringing Marks or any logo confusingly similar to the Bear Marks, either alone or in combination with other words or symbols;

(f)      Actual damages and profits under 15 U.S.C. §1117(a), in the case that Bear discovers that consumers were actually diverted from Bear to Belmans as a result of Belmans' infringement.

(g)      Treble damages in the case that this Court finds Belmans' conduct to be willful under 15 U.S.C. §1117.

(h)      An award of attorneys' fees and costs for the instant suit, in the case that this Court finds Belmans' conduct to be willful under 15 U.S.C. §1117.

(i)      An award of $50,000 in statutory damages under 15 U.S.C. §1117(d), or an amount of statutory damages under 15 U.S.C. §1117(d) that this Court deems proper.

(j)      Punitive damages this Court deems proper, in the case that this Court finds Belmans' conduct meets the standard for an award of punitive damages under Arkansas law.

(k)      For any other just relief as this Court deems just and proper.

Respectfully submitted,

**MITCHELL, WILLIAMS, SELIG**
**GATES & WOODYARD, P.L.L.C.**
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
Phone: (479) 464-5686
Email: cgalloway@mwlaw.com

By: /s/Colt D. Galloway
    Colt D. Galloway, Ark. Bar No. 2016212

18

-and-

W. Austin Clements, DC Bar No. 90019270
(pro hac vice motion forthcoming)
**MITCHELL, WILLIAMS, SELIG,**
**GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8800
Email: aclements@mwlaw.com

19

## VERIFICATION

STATE OF ARKANSAS

COUNTY OF WASHINGTON

I, Michael Zeher, after being duly sworn, state that I make this verification based on personal knowledge and on behalf of Bear Construction and Home Services, LLC. I affirm that I have read the allegations of the foregoing Verified Complaint, and I hereby declare that it is true and correct to the best of my knowledge and information.

_____
Michael Zeher

SUBSCRIBED AND SWORN to before me, a notary public, on this _6th_ day of _May_____, 2026.

```
BELEN GUZMAN
Notary Public - Arkansas
Benton County
Commission # 12713507
My Commission Expires Feb 9, 2031
```

_____
Notary Public

My Commission Expires:

February 9, 2031

20